*Cox & Peacock*, for plaintiff. *Davis & Merry,* for defendants.

---

## PAYNE *v.* SUPREME RULING OF THE FRATERNAL MYSTIC CIRCLE.

The petition as amended did not set forth a cause of action, and was properly dismissed on general demurrer.

AUGUST 19, 1911.

Complaint. Before Judge Hammond. Richmond superior court. April 18, 1910.

George E. Payne, a resident of Augusta, Richmond county, brought an action against the Supreme Ruling of the Fraternal Mystic Circle, an incorporated insurance fraternal association, with its principal office at Philadelphia, Pa., and an agency and place of business in the city of Augusta. The substance of so much of the petition as is here material is as follows: In 1906, the Modern Puritans, a similar association to the defendant, and of Norfolk, Va., issued to the plaintiff two certificates dated respectively April 23, and July 31, by which the life of plaintiff was insured for the benefit of his wife in stated amounts, and on each of which the plaintiff was to pay a given sum monthly as premium. On December 31, 1906, the American Guild of Richmond, Va., assumed all of the responsibilities covered by the certificates issued to the plaintiff by the Modern Puritans, issuing to the plaintiff two certificates in lieu of those of the last-named association. On May 27, 1907, the defendant assumed all of the liabilities to the plaintiff on the certifi-

45

cates issued to him by the American Guild, and issued to him two certificates on which he was to pay the same monthly premiums as on the original certificates. In the plaintiff's applications to the Modern Puritans for certificates of insurance, which applications were accepted, it was stated that the plaintiff was a wholesale liquor dealer. He has ever since remained in this business. On March 24, 1909, the plaintiff sent to the defendant from Augusta the following letter:

"The Fraternal Mystic Circle, Philadelphia, Penn.

"Sirs: I have just received from Mr. Fred W. Thomas notice to pay my monthly dues for March. I have heard in the meantime that a policy held by a person engaged in the sale of liquors, in your order, is void; and I want to know the facts in this particular. I made application for the policy in question with the Modern Puritans, then it was transferred to the Guild, and then to the Mystic Circle. Now when I made this application I was engaged in the whiskey business, and the agent that taken my application did so in my place of business and with full knowledge of same; and I ask you to look on the original application and see what I said my application was. I am not going to stand for an additional 75 cts. per thousand on my policy; neither will I lose what I have paid. I ask that you mail the original application to your representative, Mr. Fred W. Thomas, which will settle the question in dispute. Hoping to hear from you by return mail, I am

"Respectfully,      [Signed]      Geo. E. Payne."

On March 27 following the plaintiff received from the defendant this reply:

"Geo. E. Payne, Augusta, Ga.:

"Dear Sir and Brother: I am in receipt of your favor of the 24th inst.; and in reply will say, by referring to your application for membership we find that you stated that you were a Wholesale Liquor Dealer. The constitution and laws of the Modern Puritans provide that no person shall be admitted to nor hold membership in the Modern Puritans who is engaged as 'principal, agent, or employee in the sale of spirituous or malt liquors as a beverage.' We do not know how or why the Modern Puritans accepted your application for membership, unless they placed an interpretation upon the laws of their order to mean a person engaged in the wholesale liquor business was not selling liquor as a beverage. Be that

as it may, when you became a member of the American Guild by reason of that organization having reinsured the business of the Modern Puritans, you became subject to their constitution and laws, and their constitution and laws provide that a person who ·is engaged in the manufacture, sale, or delivery of intoxicating liquors, either as principal, agent, or servant, shall be classed as hazardous and pay a rate of 75 cts. per $1,000 per month extra; and we took the business over subject to these restrictions. It appears from a letter written by 'Mr. Floyd Thomas, under date of March 10th, that you are in the soft-drink business, and, not handling liquors, would not be subject to this extra rate. We are willing to let the past go; but if in the future you engage in the liquor business, you would become subject to the requirements of the constitution and laws, and the most favorable classification that could be given you would be the classification of the American Guild, which provides for an extra premium rate. Very truly and fraternally yours. [Signed] J. D. Myers, Supreme Recorder."

On April 9 thereafter the plaintiff sent the defendant the following letter:

"The Fraternal Mystic Circle, Philadelphia, Pa.

"Sirs: I have your letter of March 27th, and would have replied sooner but have been out of the city. In reply I will say that if it be true, as you state in your letter, that the Puritans did not insure persons engaged in the sale of liquors, then I have no insur·ance; but they received my money and receipted for it from time to time, as the Guild did and yourselves. Now there is only one thing I can do, and that is ask for the money back that I have paid, with legal interest. I see very plain from your letter your stand in this matter nothing more or less than to try to swindle me out of what I have paid. But I will spend as much more before I will submit to any such treatment. I will give you your choice of settling this with me or the courts.

[Signed]      Geo. E. Payne."

The plaintiff thereupon brought suit against the defendant for all the premiums he had paid to the several insurance associations, with interest thereon at 7 per cent. per annum, "for the average time since the payment of the same." The petition was dismissed on general demurrer, and the plaintiff excepted.

*B. B. McCowen*, for plaintiff.   *W. H. Barrett*, for defendant.

FISH, C. J. (After stating the facts.) Under the record and the briefs of counsel for the respective parties, the case is made to depend on whether the letters which passed between the parties, set forth in the foregoing statement of facts, show that the defendant committed a breach of its contract of insurance contained in the certificates it issued to the plaintiff. A careful reading of the letters will show, in our opinion, that the contract of insurance as exhibited by the certificates was rescinded or repudiated by the plaintiff, and not by the defendant. While it may be inferred from the letter written by the plaintiff to the defendant, on March 24, 1909, that the plaintiff was then engaged in the sale of liquors, and had been in such business from the time the original certificates were issued to him by the Modern Puritans, it is clear from the responsive letter written by the defendant, March 27, that the defendant did not understand that the plaintiff was then engaged in such business. In this letter the defendant informed the plaintiff that in a letter written by Thomas on March 10, who appears to have been the defendant's agent, the plaintiff was then engaged "in the soft-drink business," and not in the handling of liquors, and would therefore not be subject to the payment of the extra rate imposed on members of the association selling liquor. In this letter the defendant stated, in effect, that, whatever may have been the rights of the plaintiff in the past, it was willing "to let the past go," but that if in the future the plaintiff should engage in the liquor business he would become subject to the payment of the extra premium rate for those engaged in such business. The plaintiff was therefore put upon notice that the defendant understood from its agent Thomas, who had notified the plaintiff to pay his March dues, that the plaintiff was not then engaged in the sale of liquor; and the plaintiff, instead of informing defendant that its understanding as to this matter was incorrect and that he was still engaged in the liquor business, interpreted the letter of the defendant to be a rescission of the contract of insurance certificates held by him, and demanded of the defendant repayment to him of all premiums he had paid, with interest thereon, and soon thereafter brought his suit for the same. The plaintiff misinterpreted, we think, the letter of the defendant as being a rescission or repudiation of the certificates. This letter stated that as the plaintiff was not then engaged in the sale of liquor, he was not subject to the extra pre-

mium, but that in the event he should in the future engage in such business, then he would be subject to the extra premium. It does not appear where Thomas, the defendant's · agent, was located, nor where the plaintiff did business as a wholesale liquor dealer, and we can not legally assume that he was engaged in such business in Augusta in 1909 in violation of the general prohibition law. From what has been said, it follows that the court properly dismissed the petition on general demurrer.

*Judgment affirmed.　Beck, J., absent.　The other Justices concur.*